UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN HOLDER,
                              Petitioner,

        -against-
                                                                    **MEMORANDUM & ORDER**

KENNETH PERLMAN, Superintendent,                                    06 CV 5590


                              Respondent.
-----------------------------------------------------------------X
DEARIE, Chief Judge.

For the reasons set forth below, the application of petitioner John Holder for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) is denied and the petition is dismissed.

## DISCUSSION

### I.    State Proceedings

As a result of his involvement in a brawl on June 9, 2001, petitioner John Holder and co-defendants Arthur Diaz and Wayne Bartlett were charged with Gang Assault in the First Degree, Gang Assault in the Second Degree, two counts of Assault in the First Degree, two counts of Assault in the Second Degree, Assault in the Third Degree, and Criminal Possession of a Weapon in the Fourth Degree. On May 17, 2002, following a jury trial, petitioner was found guilty of one count of second degree assault but only on the theory of intent to cause serious injury, not the alternative theory of assault with a dangerous weapon. The weapons possession count was not submitted to the jury, and petitioner was acquitted of all remaining counts.[1] Petitioner was sentenced as a violent felony offender to a term of six years. According to the

---

[1] Diaz and Bartlett were each found guilty of assault in the *third* degree (not *second*, like petitioner) and acquitted on the remaining charges; neither appealed. Bartlett received probation. Diaz, adjudicated a youthful offender, was sentenced to 45 days in jail.

public records of the New York Department of Correctional Services, petitioner served his full sentence and was discharged on May 14, 2008. Post-release supervision was not ordered. (The complete expiration of petitioner's sentence does not render the petition moot. Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Spencer v. Kemna, 523 U.S. 1, 7-8 (1998)). .

The *pro se* petition raises three principal claims; each was addressed by appointed counsel in a petitioner's state appellate brief. Those claims are that: (1) petitioner's guilt was not established by proof beyond a reasonable doubt and was against the weight of the evidence; (2) one feature of the trial court's Sandoval ruling—that it would entertain a renewal of the state's application to impeach petitioner with acquittal conduct should petitioner take the stand and deny any prior gun use—had a chilling effect on his decision whether to testify in his own behalf; and (3) trial counsel's decision not to challenge *that portion* of the Sandoval ruling—after having already objected generally to the state's attempt to elicit acquittal conduct—amounted to constitutional ineffectiveness.

The Appellate Division unanimously affirmed petitioner's conviction. People v. Holder, 18 A.D.3d 776 (2d Dep't 2005). The Court "f[ou]nd that the evidence . . . was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt." Id. The Court further concluded, upon the exercise of its statutory power of factual review under N.Y. Criminal Procedure Law § 470.15[5], that it was "satisfied that the verdict of guilt was not against the weight of the evidence." Id. The Court also determined that petitioner's "remaining contentions [were] either unpreserved for appellate review or without merit." Id. The New York Court of Appeals denied leave to appeal. People v. Holder, 5 N.Y.3d 806 (2005).

## II. Pertinent Features of the State's Case

The victim Omar Rodney testified that petitioner, Bartlett and Diaz had been his marijuana customers for several years. Several days before the brawl that led to the charges in this case, Rodney had a fistfight with Diaz.

At approximately 10:00 p.m. on June 9, 2001, as Rodney was approaching the building where he lived in the Flatlands section of Brooklyn, petitioner approached him. Petitioner mentioned Diaz, and said he was there to "settle this now and right away" (May 7, 2002 at 71). At the same time, Diaz and Bartlett drove up and began cursing at Rodney. At one point, Diaz took a gun from his waist, pointed it at Rodney, and Bartlett and petitioner told Diaz to shoot. (Id. at 74-75, 101). Petitioner, Bartlett and Diaz then surrounded Rodney (Id. at 76). There came a point when Bartlett took the gun and rubbed it along Rodney's face (Id. at 78). Soon, a bystander tried to break up the fighting by holding back Diaz, but petitioner intervened, pushing the bystander onto a nearby car. Diaz then punched Rodney on the left side of his jaw, and while Rodney fought back, petitioner pulled a gun out of his waist and hit Rodney on the right side of his jaw, which caused Rodney to cough up blood (Id. at 81-83). Rodney then tried to flee. He got as far as the doorway of his building but petitioner, Bartlett and Diaz caught him and attacked him from behind (Id. at 83-84).

Scene witness Lamar Grant also testified. Grant kept regular company with petitioner, Bartlett, Diaz and Rodney. On the night of the brawl, Grant was on the street in front of his building with Rodney and others. When he went toward the corner convenience store, he ran into petitioner, who asked him whether he was with Rodney. Grant indicated Rodney's location, petitioner and Grant then walked there together, and petitioner told Rodney that they were "just

gonna get this over with;" at the same time, Bartlett and Diaz drove up in a van (May 9, 2002 at 356-59). Grant eventually saw Diaz pull a gun from his waist and intervened, telling him not to "do this" where everyone could see. A fight between Diaz and Rodney ensued, and when petitioner sought to join in, Grant tried to hold him back but could not. Grant then saw petitioner smack Rodney on the left side of his face "with his hand open" (Id. at 365-67, 406). The transcript reflects that Grant demonstrated the smack with a "wide open" palm (Id. at 367).

Eyewitness Mario Navas largely corroborated Rodney's account (May 9, 2002 at 419-434). Hearing commotion coming from the street, Navas looked outside his window and saw a man being attacked by several other men. He eventually saw the victim run toward a building, watched the attackers follow, and heard someone say "put it away, put it away" (Id. at 434).

Dr. Auerbach, an expert in blunt and penetrating trauma and the physician who treated Rodney, testified that Rodney's jaw was fractured in two places (one the left and right sides) and had to be wired shut, and that Rodney required two surgeries and a week of hospitalization. In Dr. Auerbach's opinion, the two fractures could have been caused by either a single blow or more than one blow; if only one, the source was "more likely . . a hard object than a fist" (Id. at 304).

### III. Standard of Review on Habeas

The "circumstances under which [the Court] may grant the writ are *strictly limited* to those where an adjudication on the merits in state proceedings 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" or involved an unreasonable determination of the facts in light of the evidence presented. Ponnapula v. Spitzer, 297 F.3d 172,

179 (2d Cir. 2002) (*quoting*, 28 U.S.C. § 2254(d)) (emphasis added). See also Carey v. Musladin, 549 U.S. 70, 74 (2006) (habeas relief available only if state court decision "was contrary to or involved an unreasonable application of *this* Court's applicable *holdings*") (emphasis added); Williams v Taylor, 529 U.S. 362, 412 (2000) (federal law in section 2254(d) "refers to the *holdings* . . . of *this* Court's decisions"); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) ("[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous;" it must be "objectively unreasonable"). State court factual findings are presumed correct unless rebutted by clear and convincing evidence 28 U.S.C. § 2254(e)(1).

## IV. The Sufficiency Claim

A habeas petitioner challenging the sufficiency of the evidence supporting his conviction bears a "very heavy burden." Ponnapula, 297 F.3d at 179. When assessing such claims, the Court must review the evidence in the light most favorable to the state. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Furthermore,

> a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences *must presume*—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and *must defer* to that resolution.

Jackson, 443 U.S. at 326 (emphasis added). To measure sufficiency, a federal habeas court "must look to state law to determine the elements of the crime," Ponnapula, 297 F.3d at 179 (internal citation omitted), and must uphold the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

Reviewing the trial record in the light most favorable to the state, the Court concludes

that the Appellate Division's rejection of petitioner's sufficiency challenge was not contrary to or an unreasonable application of the Jackson standard, nor an unreasonable determination of the facts in light of the evidence presented.

Under New York law, a person is guilty of assault in the second degree when, "[w]ith intent to cause serious physical injury to another person, he cause such injury to such person or to a third person." N.Y. Penal Law § 120.05[1]. There is no dispute that, based on the testimony of Rodney and Dr. Auerbach, the "serious injury" element of second degree assault was satisfied. Petitioner also concedes that the state established his presence at the scene and his participation, to some degree, in the actions that led to Rodney's injuries. His sufficiency challenge, therefore, appears to be limited solely to the element of intent.

Although labeled sufficiency, however, petitioner's argument is in substance an inconsistent verdict claim, for it posits that apparent inconsistencies in the verdict necessarily mean that the jury rejected the portions of the testimony that could have established intent for second degree assault. Specifically, petitioner argues that because the jury found him and his codefendants not guilty of all counts involving the use of a dangerous instrument, the jury necessarily rejected Rodney's testimony that petitioner hit him with a gun and, instead, must have credited Grant's testimony that petitioner smacked Rodney with an open hand. Petitioner further argues that because the jury acquitted all defendants of all counts of gang assault, the jury necessarily rejected an accomplice or acting in concert theory on all counts. Therefore, petitioner reasons, the only evidence arguably going to the element of intent is Grant's testimony that he smacked Rodney with a wide-open hand, and *that*, petitioner contends, is not legally sufficient to establish "intent to cause serious physical injury" within the meaning of the second degree

-6-

assault statute.

So framed, petitioner's claim is not even cognizable here. See United States v. Powell, 469 U.S. 57 (1984) (habeas relief unavailable for inconsistent verdicts); United States v. Acosta, 17 F.3d 538, 545 (2d Cir.1994) (same); Stewart v. New York, 04 CV 4426, 2008 WL 2566379, *4 (E.D.N.Y. June 26, 2008) (repugnant verdict claim embedded within sufficiency claim not cognizable on habeas). Quite simply, courts do not entertain the assertion that alleged discrepancies between verdicts in a single trial somehow reveal which portions of which witness's testimony the jury believed; even if verdicts appear inconsistent—a question the Court does not decide—"[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S. at 64-65 (internal citation omitted). "[A]n individualized assessment of the reason for the inconsistency" is prohibited, id. at 66, for any such inquiry "would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Id.

In any event, there was sufficient evidence from which a "rational juror" could have found that petitioner intended to cause serious physical injury to Rodney. Even assuming that the jury had a reasonable doubt about whether petitioner struck Rodney with a gun, that same jury could quite rationally have inferred the requisite assault intent from the totality of the record. In particular, (i) petitioner initiated the confrontation after first confirming (with Grant) where Rodney could be found; (ii) petitioner's opening remarks to Rodney were interpretable as a threat to commit serious injury; (iii) when Diaz threatened Rodney with a gun, petitioner told Diaz to shoot him; (iv) petitioner pushed away the bystander who sought to break up the fight between

Diaz and Rodney; and (v) when Rodney sought to flee, petitioner was in the group that chased him down.

Petitioner's related claim, that his conviction is against the weight of the evidence, is not cognizable on habeas. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence . . . are for the jury and not grounds for reversal on [habeas] appeal"); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15[5]"). In any event, the weight claim is meritless for the reasons already discussed.

## V. The *Sandoval* Claim

During the Sandoval hearing, the state asked the trial court for permission to question petitioner about his two prior felonies, both from Florida: a 1994 conviction for robbery, and a 1997 convictions for selling drugs to an undercover. Petitioner had apparently assaulted the undercover and attempted to take his gun from him; the prosecutor stated that he would not seek to elicit those particular facts unless petitioner "makes claims about guns or any claims that he never uses a gun or never used a gun in the past." (May 2, 2002 at 14-15). The prosecutor also asked for permission to elicit "the fact that on August 3rd of 1995 he shot a victim during a robbery where he was positively I.D.[d]" (May 2, 2002 at 15). Petitioner had been acquitted of that robbery, a fact the prosecutor conceded, but he nonetheless argued that the facts would "go[] into the fact the he never used a gun or never worked with a gun." Id.

The court ruled that it would allow full inquiry into the 1994 conviction and inquiry only as to the fact of the 1997 conviction. The court further ruled that the prosecutor could not cross-examine petitioner regarding the robbery for which he was acquitted. Finally, the court ruled that

"with regard to whether or not [petitioner] testifies, opening the door to further matters, I'll deny that at this point but with leave to renew to see exactly how [petitioner] testifies" (Id. at 16). The Court advised the prosecutor that he "c[ould] make an application at the time [i]f [petitioner] testifies and how he testifies as to whether or not I [sic] open the door to anything else." Id.

Petitioner argues that "[w]ithout the requisite unequivocal ruling recognizing the prohibition against cross-examination on acquittals, [petitioner] could not risk triggering an inquiry into such an extraordinarily prejudicial matter" (Pet'r App. Br. at 22). He argues that the Sandoval ruling therefore had an undue chilling effect on the exercise of his right to testify.

Claims regarding the scope and effect of a trial court's Sandoval ruling, however, do not raise a constitutional issue cognizable on habeas when, as here, the habeas petitioner did not testify at his criminal trial. As the Supreme Court held in Luce v. United States, 469 U.S. 38 (1984), "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Id., 469 U.S. at 41. The rationale is quite straightforward: whether the challenge to a Sandoval ruling can become constitutional depends on whether prejudice is established, but unless a defendant actually testifies, any assessment of prejudice is "wholly speculative." Luce, 469 U.S. at 41. Although Luce involved direct rather than collateral review, its rationale has been applied in the habeas context. See, e.g., Brathwaite v. Duncan, 271 F. Supp. 2d 400, 401 (E.D.N.Y. 2003) (Weinstein, J.) (Luce requires denial of Sandoval claim on habeas where petitioner did not testify). Accord Grace v. Artuz, 258 F. Supp. 2d 162. 171-72 (E.D.N.Y. 2003) (Gershon, J.) ("Under Luce, petitioner's failure to testify makes it impossible to test the propriety of [Sandoval] ruling in order to weigh the probative value of a conviction as impeachment against its prejudicial effect . . . Thus, petitioner's claim as to the impropriety of

the Sandoval ruling does not raise a constitutional issue cognizable on habeas review").

In any event, the state court's rejection of the Sandoval claim was not an unreasonable application of Supreme Court law. To be clear, petitioner does not take issue with the principal content of the Sandoval ruling but only with the trial court's announcement that it was willing to revisit that ruling if petitioner's testimony were to open the door to excluded matters. The essence of his claim is that such prospective openness to re-argument renders the ruling too equivocal to enable him to properly assess whether to testify. New York courts recognize, of course, that "[i]n the interest of plain fairness, a trial court's authority to change its Sandoval ruling is limited once defendant has decided to testify in good-faith reliance on the court's pretrial ruling." People v. Fardan, 82 N.Y.2d 638, 646 (1993). "A different rationale applies, however, when the defendant or a witness for the defense testifies to facts that are in conflict with the precluded evidence." Id.

In such instances, the defense "'opens the door' on the issue in question, and the witness is properly subject to impeachment by the prosecution's use of the otherwise precluded evidence." Id. Thus, petitioner's implicit contention—that the court's prospective openness to reconsideration deterred him from taking the stand to falsely deny prior gun use—is not a cognizable "chilling effect" theory. To the contrary, deterring defendant perjury is precisely the effect intended by the "open the door" theory of impeachment. See Fardan, 82 N.Y.2d at 646 (relies in Sandoval setting on Supreme Court rationale in suppressed statements context; "shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances") (*quoting* Harris v. New York, 401 U.S. 222, 226 (1971). Thus, far from being equivocal, the content of the court's remarks

put petitioner upon crystal clear notice of the consequences of the testimony he might give; and their timing, far from impinging upon petitioner's rights, were of unique value to him precisely because they were an *advance* notice that, if heeded, would spare him damaging impeachment.

For the same reasons, petitioner's related ineffective assistance of counsel claim is meritless. Trial counsel *did* object to the state's desire to elicit acquittal conduct (May 2, 2002 at 15); petitioner complains only that counsel did not challenge the court's prospective openness to revisit the issue. But because the trial court's ruling was appropriate, counsel's failure to object cannot be deemed deficient conduct under Strickland v. Washington, 466 U.S. 668, 687-96 (1984), and petitioner's acquittals on all gun-related counts foreclose any showing of Strickland-caliber prejudice.

## VI. Petitioner's Other Claim

"Ground Four" of the petition asserts that the New York State Department of Correctional Services improperly added three years of post-release supervision to petitioner's sentence. This claim was not exhausted at the time the petition was filed, but the Court granted petitioner's application to stay the petition while he pursued the claim in a motion to set aside his sentence under New York Criminal Procedure Law §440.20. The trial court denied the motion and the Appellate Division "affirmed," but the parties, like this Court, read the decision as favorable to petitioner, for the decision expressly states that petitioner's "sentence does not include a period of post-release supervision." People v. Holder, 46 A.D.3d 577 (2d Dep't 2007). Respondent therefore argues that the Appellate Division's ruling renders the "ground four" claim moot, and petitioner apparently agrees: his letter to the Court advising of the Appellate Division's ruling writes that "the court confirm[] my sentence *does not* include any period of

Post-Release supervision [t]hus resolving that matter." Pet'r Ltr. Dec. 19, 2007 at 2 (emphasis in original). The Court, therefore, need not address the issue.

## CONCLUSION

For the foregoing reasons, the application is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
     May __, 2009

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge